AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Apple iPhone<br>Model: 15 Pro Max<br>Seized as FP& F: 2024255200008301 Item: 002 | )<br>)<br>)<br>)<br>)<br>)<br>) |

**FILED**

Jul 31 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ VeronicaCota      DEPUTY

Case No.   24MJ8648

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:   _____ 07/30/2024 _____

_____
*Judge's signature*

City and state:  El Centro, California

HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**           Blue Apple iPhone
Model: 15 Pro Max
Seized as FP& F: 2024255200008301 Item: 002
Seized from Gustavo Adolfo PEREZ
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 24, 2024, up to and including July 24, 2024, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

**<u>AFFIDAVIT</u>**

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

| | |
|---|---|
| **<u>A-1:</u>** | Blue Apple iPhone<br>Model: 15 Pro Max<br>Seized as FP& F: 2024255200008301 Item: 002<br>Seized from Gustavo Adolfo PEREZ<br>**(Target Device #1)** |
| **<u>A-2:</u>** | Blue OnePlus Cellphone<br>Model: Nord N200 5G<br>Seized as FP& F: 2024255400018301 Item: 003<br>IMEI: 990017691159574<br>Seized from Jose Miguel CIFUENTES-Florian<br>**(Target Device #2)** |

as further described in Attachments A-1 to A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.      The requested warrant relates to the investigation and prosecution of Gustavo Adolfo PEREZ (PEREZ) for transportation of illegal alien Jose Miguel CIFUENTES-Florian (CIFUENTES) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from PEREZ and the Material Witness on or about July 23, 2024, incident to the arrest of PEREZ and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.      Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not

set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers

2

and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones

that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.      tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.      tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.      tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10.      On July 23, 2024, Border Patrol Agents (BPA) assigned to the El Centro Sector Intelligence Anti-Smuggling Unit (ASU) were conducting surveillance in Calexico, California. The ASU wears plain clothes and drives unmarked Service vehicles in order to blend in with the general public. ASU conducts surveillance and investigations on known smugglers and smuggling transportation cells operating in the Imperial Valley.

11.      At approximately 2:00 p.m. on July 23, 2024, BPA B. Smith of the Campo Border Patrol Station contacted BPA M. Clinton via telephone, and stated that a black

Chevrolet Silverado (Silverado), previously identified as a possible smuggling conveyance, was traveling eastbound and may be entering the Imperial County from San Diego County. BPA M. Clinton acknowledged the information and travelled to Drew Road on Interstate 8 in attempt to intercept and follow the Silverado.

12.    Record checks on the Silverado's license plate revealed that the Silverado had a release of liability to an unknown individual, out of Carson, California. It should be noted that alien smugglers routinely utilize vehicles which are in the process of a change of ownership.

13.    At approximately 2:10 p.m., BPA M. Clinton observed the Silverado, the Silverado was almost 20 years old, had a faded paint job, a broken plastic bed protector sticking up in the air, several scratches and dings, and appeared to be in overall poor condition. BPA M. Clinton relayed his observation to additional ASU BPAs who were positioned along Interstate 8 (I-8). BPA M. Clinton and other ASU BPAs kept constant visual on the Silverado as it travelled east on I-8 and various roads towards Brawley, California. While conducting surveillance on the Silverado, ASU BPAs observed the Silverado rapidly accelerate, weave in and out of traffic, bypass the general motoring public and utilizing an uncommon route. ASU BPAs continued surveillance on the Silverado as it continued travelling northbound into Brawley, California. Once in Brawley, California, ASU BPAs watched as the Silverado travelled eastbound into a residential neighborhood, northbound on 8th Street which turns into Old Highway 111and continued travelling northbound towards the cities on Calipatria and Niland.

14.    AUS BPAs continued mobile surveillance as the Silverado continued northbound on Old Highway 111. Additional ASU BPAs notified Indio BPAs that the Silverado was travelling towards the Old Highway 111 Border Patrol Checkpoint. BPA S. Martin, who was operating a fully marked Border Patrol service vehicle at the Old Highway 111 checkpoint informed ASU BPAs that he would be at the checkpoint and ready to assist with a vehicle stop if the Silverado began travelling northbound on Frink Road, which ASU

1  BPAs and Indio BPAs know is a route that circumvents the fully operational Old Highway

2  111 Border Patrol Checkpoint.

3      15.    As the Silverado passed the cities of Calipatria and Niland, ASU BPAs

4  continued to update Indio BPAs of their location as they continued travelling towards the

5  Old Highway 111 checkpoint. Upon reaching Frink Road, which is approximately 500

6  yards south of the old Highway 111 checkpoint, ASU BPAs and BPA S. Martin watched

7  as the Silverado slowed down, made a northeast turn and began travelling northbound on

8  Frink Road, away from the Old Highway 111 checkpoint, effectively circumventing the

9  Old Highway 111 checkpoint. ASU BPAs know from experience that Frink Road is

10  commonly used to circumvent the checkpoint to elude/ avoid inspection.

11      16.    As the Silverado reached the Lark Spa RV Park, BPA S. Martin activated the

12  lights and sirens of his fully marked service vehicle in order to conduct a vehicle stop on

13  the Silverado. The Silverado pulled over and came to a complete stop at the entrance of the

14  Lark Spa RV Park. BPA S. Ley approached the driver side of the Silverado with Border

15  Patrol markings and insignia fully visible. BPA S. Ley identified himself as a BPA to the

16  driver, later identified as Gustavo Adolfo PEREZ (PEREZ) and questioned him as to his

17  citizenship. PEREZ stated that he was United States Citizens. BPA S. Ley then asked

18  PEREZ who his front seat passenger was. PEREZ stated that he did not know and that he

19  had just picked him up in Brawley, California. BPA S. Martin then questioned the front

20  seat passenger, later identified as Jose Miguel CIFUENTES-Florian (CIFUENTES) as to

21  his citizenship. CIFUENTES admitted to being in the United States illegally.  PEREZ and

22  CIFUENTES were then transported to the Calexico Border Patrol Station where their

23  biographical data was taken and recorded.

24      17.    All subjects were placed under arrest and transported to the Calexico Border

25  Patrol station for further processing.

26      18.    During a post-Miranda interview, Principal PEREZ stated that he is a citizen

27  of the United States. PEREZ stated he was promised payment of approximately $500 USD.

28  PEREZ stated that he received a random call from an acquaintance known only as "TREY".

Perez stated that TREY offered him a job which entailed picking up an individual that crossed the border from Mexico into Tecate, California. PEREZ stated he was instructed to take that individual to a trailer park. Perez stated the location was given to him by TREY via GPS and text message. Perez stated that the individual he was to pick up was given the description of his truck from TREY. Perez stated that the individual would get into his vehicle, and drive toward the agreed upon destination of the trailer park. PEREZ stated that shortly after arriving at the trailer park location they were arrested by the U.S. Border Patrol.

19.    During a post-Miranda interview, Material Witness CIFUENTES stated that he is a citizen of Guatemala. CIFUENTES stated his destination was Los Angeles, California and that arrangements were done by him. Upon his arrival to Los Angeles, California he was to pay 120,000 Quetzales ($15,000 dollars). CIFUENTES stated he observed a black truck and boarded on the passenger's seat.

20.    During a search incident to arrest of PEREZ and the Material Witness, two cellphones were found: a blue Apple iPhone (Target Device #1) was found by BPA-I S. Ley and claimed by PEREZ. A blue OnePlus cellphone (Target Device #2) was found by BPA-I L. Heipt and claimed by CIFUENTES. All cellphones were seized as evidence.

21.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on June 24, 2024, up to and including July 24, 2024, the day after the arrest of PEREZ and the Material Witness.

## METHODOLOGY

22.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is

subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

**CONCLUSION**

25.     Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that PEREZ and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by PEREZ, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of July, 2024.

5:13 p.m.
_____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Blue Apple iPhone
                 Model: 15 Pro Max
                 Seized as FP& F: 2024255200008301 Item: 002
                 Seized from Gustavo Adolfo PEREZ
                 **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Blue OnePlus Cellphone
             Model: Nord N200 5G
             Seized as FP& F: 2024255400018301 Item: 003
             IMEI: 990017691159574
             Seized from Jose Miguel CIFUENTES-Florian
             **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 24, 2024, up to and including July 24, 2024, and is limited to the following:

a.     tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.     tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.     tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.     tending to identify the user of, or persons with control over or access to, the Target Device;

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.